IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-02407-MJW-PAC (consolidated with 05-cv-02409-MJW-PAC)

NORTHWEST TERRITORY LIMITED PARTNERSHIP, a Minnesota limited partnership,

    Plaintiff,

v.

OMNI PROPERTIES, INC., a Colorado corporation, et al.,

    Defendants.

---

Civil Action No. 05-cv-02409-MJW-PAC (consolidated with 05-cv-02407-MJW-PAC)

HEATHER APARTMENTS LIMITED PARTNERSHIP, a Minnesota limited partnership,

    Plaintiff,

v.

OMNI PROPERTIES, INC., a Colorado corporation, et al.,

    Defendants.

---

**ORDER ON DEFENDANTS' MOTIONS FOR PARTIAL
SUMMARY JUDGMENT(Docket Nos. 54 and 59)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

    This case is before this Court pursuant to the Order of Reference Pursuant to 28 U.S.C. § 636(c) filed on March 29, 2006, and the parties' unanimous consent to disposition of this action by a United States Magistrate Judge.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

    Plaintiffs are two Minnesota Limited Partnerships that owned two large

apartment complexes in Oklahoma City, Oklahoma. Defendant Omni Properties, Inc., is a property management company based in Denver, Colorado. Defendant Greg Gulley is the president and owner of Omni. Plaintiffs contracted with Omni to provide property management services for the Oklahoma City apartment complexes. Plaintiffs claim in this action that Defendants mismanaged the apartment complexes in numerous respects over the course of approximately two years. Plaintiffs specifically assert claims for negligence, breach of contract, and breach of fiduciary duty. Plaintiffs allege in their negligence claims that Defendants owed a duty to Plaintiffs to manage the properties in accordance with the standard of care ordinarily employed by similarly situated property managers and that Defendants breached that duty by failing to properly maintain the properties, misusing assets designated for the operation and maintenance of the properties, and failing to keep suitable business records or provide Plaintiffs with an accurate accounting of receipts and expenditures for the properties.

This action was commenced in the United States District Court for the District of Minnesota on October 18, 2004. On November 22, 2005, the District of Minnesota entered an order transferring the action to this Court pursuant to 28 U.S.C. § 1404(a) on convenience grounds.

## II.  PENDING MOTIONS

Pending before the Court are motions for partial summary judgment filed by Defendants in each of the consolidated cases. On October 17, 2006, Plaintiffs filed a brief in opposition to the motions for partial summary judgment. On November 6, 2006, Defendants' Reply Brief in Support of Their Motions for Partial Summary Judgment was

filed. The Court has carefully considered the motions for partial summary judgment, the response, the reply thereto, and the applicable case law and Federal Rules of Civil Procedure. The Court now being fully informed enters the following order.

### III.  STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id. at 1146-47 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)).

## IV. DISCUSSION

Defendants seek entry of summary judgment on Plaintiffs' negligence claims. Defendants contend that the negligence claims are barred by the economic loss rule under Colorado law because Plaintiffs are seeking to recover economic damages for an alleged negligent breach of a contractual duty. Plaintiffs raise four arguments in their response to the partial motions for summary judgment. The Court will address each of these arguments in turn.

**A. Choice of Law**. Plaintiffs first argue that Minnesota law, rather than Colorado law, applies in this action and that, under Minnesota law, the economic loss rule does not bar their negligence claims. In support of this argument Plaintiffs note that, when a case is transferred on convenience grounds pursuant to § 1404(a), "the transferee court is *obligated* to apply the law of the state in which the transferor court sits." Benne v. IBM Corp., 87 F.3d 419, 424 (10th Cir. 1996). Therefore, Plaintiffs argue that Minnesota law governs this action because it was filed in the District of Minnesota and was transferred to this Court pursuant to § 1404(a) on convenience grounds.

Plaintiffs argument that Minnesota law applies is correct, but incomplete because Plaintiffs do not address the choice of law issue under Minnesota law. "A federal court sitting in diversity applies the substantive law, including choice of law rules, of the forum state." Barrett v. Tallon, 30 F.3d 1296, 1300 (10th Cir. 1994). Therefore, the Court must apply the choice of law rules under Minnesota law to decide whether to apply the substantive law of Minnesota or Colorado in this action.

> When conducting a choice of law analysis under Minnesota law, the court's threshold task is to decide whether the choice of one state's law over another creates an actual conflict.  See Jepson v. General Cas. Co. of Wis., 513 N.W.2d 467, 469 (Minn. 1994).  If an actual conflict is detected, the court's next step is to determine whether the law involved is procedural or substantive.  See Gate City Fed. Sav. & Loan Ass'n v. O'Connor, 410 N.W.2d 448, 450 (Minn. App. 1987).  If the court concludes that the law involved is procedural, then it will apply the law of the forum, i.e., Minnesota law, without further analysis.  See Davis v. Furlong, 328 N.W.2d 150, 153 (Minn. 1983) ("[Minnesota follows] the almost universal rule that matters of procedures and remedies [are] governed by the law of the forum state.").  However, if the court concludes that the law involved is substantive, then it must apply the five choice-influencing factors first articulated by the Minnesota Supreme in Milkovich v. Saari: (1) predictability of result; (2) maintenance of interstate order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; (5) application of the better rule of law.  295 Minn. 155, 203 N.W.2d 408, 412 (1973).  Finally, as a general matter, the court must bear in mind the requirements of the federal constitution when conducting the foregoing analysis: "'[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.'"  Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 818, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) (quoting Allstate Ins. Co. v. Hague, 449 U.S. 302, 312-13, 101 S. Ct. 633, 66 L. Ed. 2d 521 (1981)).

Honeywell, Inc. v. Ruby Tuesday, Inc., 43 F. Supp. 2d 1074, 1077-78 (D. Minn. 1999).

In the instant action, there is an apparent conflict between Minnesota law and Colorado law regarding the economic loss rule.  Plaintiffs contend, and Defendants apparently concede, that the economic loss rule under Minnesota law applies only to commercial transactions involving goods sold.  See Minn. Stat. § 604.101 (2004). Under Colorado law, the economic loss rule is not limited to commercial transactions

involving the sale of goods.  See, e.g., Town of Alma v. AZCO Constr., Inc., 10 P.3d 1256 (Colo. 2000) (applying economic loss rule to negligence claims by town against contractor making improvements to town's water distribution system).

The next question, then, is whether the economic loss rule is substantive or procedural under Minnesota law.  See Honeywell, 43 F. Supp. 2d at 1077.  In Minnesota, "substantive law is that part of law which creates, defines, and regulates rights."  Nesladek v. Ford Motor Co., 46 F.3d 734, 736 (8th Cir. 1995).  Therefore, it is clear that the economic loss rule is substantive rather than procedural.

Because the Court has determined that the economic loss rule is substantive, the Court must apply the five Milkovich factors set forth above to determine whether Minnesota or Colorado law regarding the economic loss rule applies in this action.  See Honeywell, 43 F. Supp. 2d at 1077.  The first Milkovich factor is predictability of result.  This factor "represents the ideal that litigation on the same facts, regardless of where the litigation occurs, should be decided the same to avoid forum shopping" and "acts to preserve the parties' justified contractual expectations."  Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co., 604 N.W.2d 91, 94 (Minn. 2000).  The second Milkovich factor, maintenance of interstate order, primarily is concerned with whether application of one state's law would manifest disrespect for the other state's sovereignty or impede the interstate movement of people and goods.  See id. at 95.  Defendants argue that these two factors favor application of Colorado law because Colorado has the greater connection to the dispute in the instant action.  See Honeywell, 43 F. Supp 2d at 1079 (finding first two Milkovich factors favored application of Alabama law because

contracts at issue were signed and delivered in Alabama, payment was made from Alabama, and Minnesota's only connection was that it was home to one of the contracting parties). The Court agrees. In its order transferring the instant action to this Court, the District of Minnesota determined that the contracts between Plaintiffs and Omni were largely negotiated in Colorado and performed in Colorado and Oklahoma, that the alleged mismanagement largely took place in Colorado or Oklahoma, and that this case is far more closely connected to Colorado than to Minnesota. Therefore, the Court finds that the first two Milkovich factors favor application of Colorado law.

The third Milkovich factor is simplification of the judicial task. This factor is concerned with the clarity of the conflicting laws. See Nodak, 604 N.W.2d at 95. This factor is not given much weight when the law of either state court could be applied without practical difficulty. See id. In the instant action, the conflicting interpretations of the economic loss rule are clear and the Court is capable of applying either Minnesota or Colorado law.

The fourth Milkovich factor is advancement of the forum's governmental interest. Defendants argue that this factor favors application of Colorado law because "[b]y preventing the overlapping of Plaintiffs' negligence and breach of contract claims, the application of Colorado's economic loss doctrine would serve Minnesota's interest that 'people should get the benefit of the contracts they enter into, nothing less and nothing more.'" (Defs.' Reply Br. in Support of Mots. for Summ. J. at 6, quoting Jepson v. General Cas. Co. of Wisconsin, 513 N.W.2d 467, 472 (Minn. 1994).) The Court is not

persuaded and finds that the fourth Milkovich factor does not favor either Minnesota or Colorado law.

Defendants do not address the fifth Milkovich factor, application of the better rule of law, because the Minnesota Supreme Court has not placed any emphasis on that factor in more than twenty years.  See Nodak, 604 N.W.2d at 96.  The Court agrees that the fifth Milkovich factor favors neither the application of Minnesota nor Colorado law.

In summary, the Court finds that two of the Milkovich factors favor application of Colorado law and that the other three factors favor neither Minnesota nor Colorado law. As a result, the Court will apply the economic loss rule under Colorado law.

**B.  Waiver of the Economic Loss Rule**.  Plaintiffs next argue that Defendants waived the affirmative defense of the economic loss rule because it was not raised in their answers.  Defendants argue in their reply that the economic loss rule is not an affirmative defense and that, even if it were, it should not be deemed waived in this action.

Pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, a party pleading to a preceding pleading "shall set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense."  Furthermore, a failure to raise an affirmative defense under Fed. R. Civ. P. 8(c) generally results in a waiver of that defense.  See Bentley v. Cleveland County Bd. of County Comm'rs, 41 F.3d 600, 604 (10th Cir. 1994). However, "strict adherence to the pleading requirement is inappropriate when the purpose of the requirement has been otherwise fulfilled."  Ahmad v. Furlong, 435 F.3d

1196, 1201 (10th Cir. 2006) (collecting cases finding no waiver if there is adequate notice and no prejudice to the opposing party caused by the delay in raising the affirmative defense); see also Stoebner v. Parry, Murray, Ward & Moxley, 91 F.3d 1091, 1093-94 (8th Cir. 1996) (rejecting waiver argument because there was no showing of a lack of notice of affirmative defense or any prejudice in ability to respond).

Regarding the issue of whether the economic loss rule is an affirmative defense, Defendants cite a Texas case discussing the issue and holding that the economic loss rule is "a court-adopted rule for interpreting whether a party is barred from seeking damages in an action alleging tort injuries resulting from a contract between the parties" rather than an affirmative defense.  See Tarrant County Hosp. Dist. v. GE Automation Servcs., Inc., 156 S.W.3d 885, 895 (Tex. Ct. App. 2005).  The Texas court reasoned that "[a]n affirmative defense establishes an independent reason why the plaintiff should not recover on its asserted cause of action" and that

> the economic loss rule is not an independent reason for denying recovery; instead, it applies to the contract that forms the basis of the existing dispute and precludes recovery when a plaintiff's injury is only the economic loss to the subject of a contract itself, as determined from reviewing the substance of plaintiff's cause of action.

Id.  Plaintiffs cite two cases that refer to the economic loss rule as an affirmative defense, but neither case provides any analysis of the issue.

The Court need not resolve whether the economic loss rule is an affirmative defense in this action because, even assuming that it is, the Court finds that the defense has not been waived.  Plaintiffs have received adequate notice that Defendants are raising the economic loss rule such that the purposes of Rule 8(c) have

been satisfied.  In addition, Plaintiffs fail to identify any prejudice that has arisen from Defendants' failure to raise the economic loss rule in their answers.

**C.  Application of the Economic Loss Rule**.  Plaintiffs next argue that, even under Colorado law, the economic loss rule does not bar their negligence claims in this action.  "The economic loss rule is intended to maintain the sometimes blurred boundary between tort law and contract law."  A.C. Excavating v. Yacht Club II Homeowners Assoc., 114 P.3d 862, 865 (Colo. 2005).  The rule has been stated as follows:  "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law."  Town of Alma v. AZCO Constr., Inc., 10 P.3d 1256, 1264 (Colo. 2000).

> The essential difference between a tort obligation and a contract obligation is the source of the parties' duties. Contract obligations arise from promises the parties have made to each other, while tort obligations generally arise from duties imposed by law to protect citizens from risk of physical harm or damage to their personal property.

BRW, Inc. v. Dufficy & Sons, Inc., 99. P.3d 66, 72 (Colo. 2004) (citation omitted). "Contract law is intended to enforce the expectancy interests created by the parties' promises so that they can allocate risks and costs during their bargaining."  Town of Alma, 10 P.3d at 1262. In determining whether Defendants owed Plaintiffs a duty of care, the Court considers "the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the defendant's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden

upon the defendant." A.C. Excavating, 114 P.3d at 868. "Where there exists a duty of care independent of any contractual obligations, the economic loss rule has no application and does not bar a plaintiff's tort claim because the claim is based on a recognized independent duty of care and thus falls outside the scope of the economic loss rule." Id. at 866.

In the instant action, the Court finds that Plaintiffs' negligence claims are barred by the economic loss rule because there is no independent duty of care owed by Defendants under tort law. Instead, the source of the duties owed by Defendants is the contract between the parties. As noted above, Plaintiffs allege in their negligence claims that Defendants owed a duty to Plaintiffs to manage the properties in accordance with the standard of care ordinarily employed by similarly situated property managers and that Defendants breached that duty by failing to properly maintain the properties, misusing assets designated for the operation and maintenance of the properties, and failing to keep suitable business records or provide Plaintiffs with an accurate accounting of receipts and expenditures for the properties. Each of these alleged breaches, failure to maintain the properties properly, misusing assets, and failing to keep suitable business records or provide an accurate accounting, also is listed in Plaintiffs' breach of contract claims as an alleged breach of the contracts.

The cases cited by Plaintiffs in support of a different conclusion are distinguishable because those cases all involve independent duties owed to consumers and homeowners by building contractors. See id. at 865 (construction subcontractors owe independent duty of care to homeowners to act without negligence in construction

11

of homes); Cosmopolitan Homes, Inc. v. Weller, 663 P.2d 1041, 1042 (Colo. 1983) (home builder owes independent duty of care to homeowner to act without negligence in the construction of a home); Metropolitan Gas Repair Serv., Inc. v. Kulik, 621 P.2d 313, 315 (Colo. 1980) (heating contractor owed duty of reasonable care to homeowner customer); Lembke Plumbing and Heating v. Hayutin, 366 P.2d 673, 677 (Colo. 1961) (plumbing contractor owed duty of reasonable care to homeowner customer). In the instant action, the contracts at issue were negotiated by sophisticated entities capable of assessing and weighing the risks of nonperformance of the contracts. Therefore, because there is no independent duty of care, the economic loss rule bars Plaintiffs' negligence claims.

**D. Application of the Economic Loss Rule to Defendant Gulley**. Plaintiffs' final argument is that the economic loss rule cannot preclude the negligence claims against Defendant Gulley because he was not a party to the contracts. Defendants respond that the economic loss rule precludes the negligence claims against Defendant Gulley as well as Defendant Omni because Defendant Gulley was acting on behalf of Defendant Omni and the contracts between the parties are the source of the duties allegedly breached by Defendant Gulley.

Neither Plaintiffs nor Defendants cite any cases that address the issue of whether the economic loss rule extends to claims against a Defendant who was not a party to the contract at issue. However, the Court is not convinced that a different rule should apply to Defendant Gulley, the president of Defendant Omni, than applies to Defendant Omni. Because the Court has determined that the contracts are the source

of the duties allegedly breached by Defendants in this action, the economic loss rule also bars the negligence claims against Defendant Gulley.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Defendants' Motion for Partial Summary Judgment (docket no. 54) and Defendants' Motion for Partial Summary Judgment (docket no. 59) are GRANTED.

Dated: February 15,2007          S/ Michael J. Watanabe
      Denver, Colorado          Michael J. Watanabe
                                           United States Magistrate Judge